Our next case is Precision Fabrics Group v. Tietex International, 2019, 1751 and 1754. Ms. Borchers.  The fundamental error by the district court was expressly declining to resolve a claims scope dispute that the court knew about prior to and during trial over the one and only word at issue on infringement, and that word is swells in the court's construction of the term intumescent. The court construed intumescent to mean chars and swells upon exposure to heat or flame. Tietex admitted that the coding charred, and so under the court's claims instruction, the only infringement issue at trial was does Tietex's coding swell upon exposure to heat or flame. That answer was a binary decision, a yes or a no, based on does it swell or not. Repeatedly before and during the trial, Tietex presented a different meaning of the word swells that required added limitations that were not in the court's claim construction. Examples of those added definitions to swells is that swell means does it swell enough? That's at appendix 3290. Does it swell significantly? That's at appendix 2785. Does it swell in an appropriate way? That's at appendix 2780. Does it swell to a high value? Appendix 2781. Does it swell to an unacceptable level? That's at appendix 2781. Counsel, your brief raises all sorts of procedural concerns and objections. But isn't this case basically about the jury finding there was no infringement based on a claim construction provided by the court that seems reasonably correct? No, Your Honor. We believe that this is an O2 micro case where there was an active and live unresolved claim scope dispute that the court erred in finding was a, went to the factual issue of infringement. We believe that was the fundamental error by the court. When we moved in the motion and lemonade to preclude TYTEX from offering a different meaning for swells at trial, the court expressly recognized O2 micro but concluded that under O2 micro, this wasn't a claim scope dispute. This was a factual question relating to the test for infringement. We submit that was the fundamental error and that continued through trial. The trial record shows that PFG and TYTEX consistently throughout the trial presented to the jury two different meanings of the word swells. PFG consistently said swells mean swells, what's in the construction. And that testimony was in PFG's opening, in Dr. Pratt's testimony about every single sample that he tested, that that's what swelling means, and in PFG's closing. In contrast, consistently throughout the trial, TYTEX argued a different meaning of swelling to the jury through witness examination and in its closing argument. Perhaps there's several examples of this in our brief. There's two in particular that I'll highlight right now, which is that over PFG's objection during Dr. Horak's testimony, Dr. Horak was allowed to testify that swells has a certain meaning to one of ordinary skill in the art. That is the claim of construction question, yet he was allowed to say that. And then he went on to say, at one point specifically, I was looking for a change in dimension, and the change in dimension for material which is defined as one which swells and chars more than a little. So he said his definition for swelling was it swells and chars more than a little, which is not in the construction and is improperly adding limitations. That's at appendix 2853 through 2854. Dr. Horak also, throughout his testimony, said that whether he chose his engineering caliper, for example, because he needed to determine whether it was swelling more than a little. Again, he's saying the definition is more than a little. And that swelling has to be in an appropriate way, as one would expect a material of this type to swell if it was swelling, a swelling intumescent-like material. And these quotes are from appendix 2780 to 2782. Dr. Horak also said for material which swells and chars, one would expect quite a high value, the increase to a high value. And that when looking for intumescence, he said, quote, we have to agree what is acceptable level of swelling and what is a little level of swelling, if you like. What is more than a little, and what is less than a little. And likewise, in Tytex's closing argument, Tytex also argued, based on Dr. Horak's testimony and testimony that were challenging from Mr. Wildman and from Mr. Holland, that in order to be a real intumescent, the intumescent has to have a very high amount of carbon. That's not in the court's construction. And in their closing, they said that an intumescent, based on the witness testimony, has to pop out like popcorn. That's not in the court's construction. So the fundamental error here was that it was left to the jury, for the jury to decide what is the scope of the meaning swells. This error in allowing the jury to decide that was an error of law that this court reviews de novo. And it was highly prejudicial to PFG. PFG, of course, prepared his case and presented his case based on the court's actual construction. And it was error to have the witnesses in Tytex arguing to the jury that the standard, the definition of infringement was something different than what the court had said that it was. So PFG requests that this court reverse the jury verdict and enter judgment as a matter of law under the court's correct claim construction without Tytex's additional limitations. And we submit that under that correct claim construction, substantial evidence does not exist to support the jury's non-infringement verdict. Tytex had admitted that every other limitation in the claims at issue were present. All of Dr. Bott's testing showed that the coating swells. And even Dr. Horrocks testified on cross-examination that Dr. Bott's aluminum pan testing showed swelling. And that's at appendix 2848. Can you address the doctrine of equivalence issue? Yes. So on the doctrine of equivalence, we filed an eliminate motion to preclude Dr. Horrocks from testifying on the doctrine of equivalence because it was untimely. It was not contained in his expert report. The court, in denying our motion, said that found instances in his report where the word function was present and said that magic words aren't required and that the disclosure of this word function was enough to disclose the opinion. That was error. To allow that, the expert report had no opinion on the doctrine of equivalence. And the portion of the report that the court pointed to was actually in a claim construction section of the report. And Dr. Horrocks simply never disclosed that in his... If we agreed with you, what would the remedy be? The remedy on this is abuse of discretion. But here, we believe that the remedy would be that you could reverse and enter judgment as a matter of law. Because once you remove Dr. Horrocks' improper opinion on the doctrine of equivalence, then the evidence that is left was Dr. Bott's testimony under the doctrine of equivalence. It's a burden of proof. Yes. If they put on no evidence at all, isn't the jury permitted to conclude that they didn't believe your expert or didn't agree with you? Isn't it possible that you put on evidence of infringement under the doctrine of equivalence and the jury could still conclude you didn't prove infringement even though they put on no evidence? I believe that the standard is that there would have to be no substantial evidence to support the jury's verdict of no infringement under the doctrine of equivalence. And here, there was substantial evidence to support a verdict of... That's not the question. You didn't say that right at all. The question is, is there substantial evidence to support the jury's verdict? The jury could reject your expert's testimony. You have the burden of proof on the issue of infringement. Yes, we have. The jury could reject your expert's testimony because they thought he wasn't credible even if they put on nothing. Yes. I don't see how you get J-mal. I understand your point. You know what I think you would have gotten would have been a new trial, but you didn't ask for it. We did ask for a new trial on that. No, you didn't. Go back and look yourself. Have him look right now on rebuttal. I will look and I'll address that on rebuttal. But to your point... You saw the motion for a new trial, but it was only on that willfulness testimony you didn't like. It didn't include this on DOE. You could have potentially gotten a new trial. I will check the record on that, Your Honor. Here, while the jury could have disregarded or not believed Dr. Bott's testimony, without the improper testimony on the doctrine of equivalence, the only evidence that was left on the record was Dr. Bott's testimony on the doctrine of equivalence. This is also where you're wrong. This guy was free to testify about function because he had included it in his expert report. And then the attorney could have spun that. You're right. He should never have said the word equivalence. It was not permissible. I agree. But what he could have offered and did offer was testimony regarding function and how these things function because he had expressly addressed that in his expert report. And then the attorney could have stood up and said, his testimony regarding function likewise proves there can be no DOE because it's got to have the same function way result. And so there was testimony that went to equivalence, even when I exclude as inadmissible his statements about DOE in particular. And so that's sort of another problem you have is, to be honest with you, the inadmissible statements, and I agree with you, they should have been inadmissible. Those inadmissible statements aren't the only evidence they had that pertained at all to function way and result and that other evidence would still be in. On the issue of doctrinal equivalence, I hear what you're saying. It also does not address that the evidence that we submitted, that TYTAX knew from its supplier on the day that suit was filed that the coding forms an intumescent char and behaves as an intumescent is what the supplier told TYTAX on the day that suit was filed and that evidence was put to the jury as well as Dr. Bott's testing. And I'm not sure that I agree with your honor that Dr. Horak's being allowed to testify about function as a basis for doctrinal equivalence opinion to be able to actually say there's no infringement under the doctrinal equivalence when he had never disclosed that opinion. I totally agree with you. He can't say anything about doctrinal equivalence, but what he could testify to is function and then the attorney argument could explain how his testimony on function applies equally to this other area. That's your problem. Don't think I didn't read it all. I did. It's a lot to read. I understand that it's a lot to read, yes. You're into your rebuttal time? Yes, I'll save my rebuttal time. Thank you. Good morning, your honors, and barely. And may it please the court. The timing is right in front of you. You're right. Your honors, I'll go ahead and hit a couple points PFG just made. The first is that she cited the two things in the testimony of Dr. Horak's that she complains about. One is testimony concerning swelling in an appropriate way, and that's at page appendix 2780 through 2781. And the other one she talked about was significant swelling and scientifically significant swelling. That's at page 2785. Both of the objections to that testimony were sustained at trial. And PFG never asked for a curative instruction. It was their burden to object to it, and they did, but the court sustained those objections. And then it was their burden to ask for a curative instruction immediately after the sustaining of that objection. They didn't do that. That's the same issue with respect to Mr. Holland's testimony and Mr. Wildman's testimony. PFG was instructed several times during trial that the judge was going to take the case or the questioning question by question, and that if you don't like a question, then object. The court time and time again told PFG to do that, and they did not with respect to Mr. Holland's testimony and Mr. Wildman's testimony. Now, the issue of Dr. Horwitz's testimony on doctrine of equivalence is really a red herring. It's harmless whether it's excluded or not, because there's ample testimony that was not objected to from both Mr. Wildman and Mr. Holland regarding the substantially same way prong of the doctrine of equivalence test, and that testimony was the same as Dr. Horwitz's testimony. That's not the test. The test, if you have inadmissible testimony that goes to the heart of an issue by an expert, the test isn't, okay, well, even if that testimony was in fact admitted and the jury heard it and wasn't informed to disregard it, is there other stuff on the record they could have based their verdict on? We can't get inside their heads and know. Maybe they based their verdict entirely on him. He seems like a very likable witness. I read his whole testimony. I thought to myself, I have no doubt this man appealed to that jury in South Carolina, no doubt in my mind. I read his testimony. He's an excellent expert. All of that, I mean, he must have thrown you off a little bit when he said, I met the doctrine two days ago, so you may not share my opinion and I would understand why. But all of that being said, the test isn't, is there some other evidence the jury could have based their decision on? The test is, is there a reason to be concerned that the inadmissible testimony may have prejudiced the verdict? And that would be the case, Your Honor, if it was a new trial request. And you're exactly right. There is no new trial requested here based on that testimony, based on the exclusion of Dr. Horrocks. Yep. No, you're right. And they framed it as a j-mal. By framing it as a j-mal, I have to decide that they're entitled to an entire verdict at the other way in light of all the evidence, not just whether this verdict could have tainted the judgment. That's right, Your Honor. And with respect to that issue, there was ample evidence in the record that there was no swelling, that there was ample evidence that the jury, the court, the parties understood that the issue was swelling or no swelling, not some degree or amount of swelling. The parties and the court said in their closing and opening statements and in the jury instructions 19 times that the issue was swelling versus no swelling. And what evidence did TYTX present on that issue? They presented the evidence primarily from Dr. Horrocks. And that testimony is not challenged here on appeal. Dr. Horrocks' testimony on the lack of swelling is not challenged here today. Dr. Horrocks had two separate independent bases for concluding that there was no swelling. First of all, he had conducted tests. His testing showed, in his own words, his test results were that there was no swelling, close quote. Quote, there was no swelling, close quote. That testimony alone was enough evidence for the jury to conclude that there was no swelling. But he did more than that, Your Honors. Based on his knowledge and understanding of chemistry, he looked at the formulation of the SVX-41 coating. And he said that it could not swell. Not only that it did not swell, but there was nothing in it. There was no swelling agent in the formulation that would allow it to swell. Now, PFG doesn't challenge either bits of that testimony today on appeal. And so, either bit of evidence, either one of those two pieces of evidence is sufficient for the jury to base the conclusion of no swelling on. And Your Honor, you're exactly right. Earlier in questioning, you asked about could the jury have just discredited, disbelieved the testimony of PFG's expert. Absolutely. They had the burden of proof, so it was their burden to put on proof that was credible and believable that from which a jury could find. But as this court recently recognized, I think in December, in the Syngenta versus Willowwood case, the issue is not or the question is not whether evidence supports an appellate's position. The question is whether or not the evidence supports the jury's verdict. That's the question. Now, PFG focused most of its briefing on showing its evidence, the evidence from Dr. Bytt, its evidence that shows that it swells. Well, again, Your Honors, that's not the test. And this case is not an O2 micro case. This test is Verizon versus Cox FiberNet. It is eerily similar. It is on all fours with Verizon. First and most importantly, this is not a question of law. If claim construction had been appealed, and of course, they wouldn't have appealed claim construction because the court adopted their claim construction word for word. The court rejected our claim construction. They had the opportunity. And PFG had the opportunity. If they didn't like the use of the word swells, which is what they proposed, then they had every opportunity to use a different word, to give a further interpretation of the word swells, to get the judge to say that swelling meant one micron increase in size. It had all that opportunity. But it didn't do that. PFG presented a proposed construction. The court adopted it word for word. Now, this case is exactly like Verizon. In the Verizon case, this court said that the district court applied Fourth Circuit law, which, thank goodness, is the same law we're here applying today, Fourth Circuit law. And in that case, this court said that whether the jury was deprived of its ability to decide the case is reviewed for an abuse of discretion. Just as in Verizon, the parties and the district court reminded the jury of the claim construction many times. I've already mentioned 19 different times. And Verizon, just as in Verizon, PFG never objected to the jury instructions, did not object at all to Tytex's opening statement and this closing statement issue that PFG just presented. PFG did not object to it. They didn't object and ask the court to issue a curative instruction regarding the closing statement. Just as in Verizon, Tytex's own expert, our Dr. Horrocks, acknowledged the proper claim construction when he said on the stand, and this is a quote, that the, quote, whole issue is swelling, close quote. He understood that was the issue. The jury understood that was the issue. And that's the testimony and the evidence that we presented. Just as in Verizon, PFG is not asserting that the claim construction was incorrect. I mean, how could they? They won the claim construction. Now, in addition, this whole issue about doctrinal equivalence, and Judge Moore, I understand your point that our expert witness used the words doctrinal equivalence, but he's not a normal patent law expert. He couldn't have a patent law expert testify. That's right, Your Honor. Back when I first came along, we had patent law experts. Well, I used to testify as one. I understand, Your Honor. And then I wrote the opinion that said it can't happen anymore. Well, in some respects, I'm glad that's the case. But he's a technical expert. This is the first time he ever testified. And he's a professor. Fifty years of experience in intermedicine chemistry, Ph.D. chemist. In fact, he published. It can't be easy to find a really likable guy with that pedigree, and you did. I can tell when I read the transcript. He's very likable. But, I mean, you must have just lost it when he said, I only met the doctor two days ago after you had gained the judge's agreement that it could come in because he read his earlier opinion as having offered enough that everyone should be on notice. He's going to give an opinion on DOE. And then this guy, in response to your question, says, I met it two days ago. I don't know. Your Honor, actually. I can't even imagine what you were going through at that exact moment in time. Your Honor, it struck me a little odd. But he actually is right because it didn't matter that he didn't use the magic words, doctrine of equivalence, in his report or in his deposition. He didn't give an opinion in his report on DOE. He gave an opinion on function. And you, as an attorney, could have put on his opinion on function, and then you could have explained to the jury that's one of the necessary elements for DOE. This guy should not. And, you know, it makes me a little sad because this judge did such a great job. He can't possibly have a ton of patent cases. And he was so careful, question by question, on this. But he shouldn't have allowed this person to testify on DOE. And you shouldn't have tried to get it. You already had a strong case. Well, Your Honor, frankly, he testified on doctrine of equivalence, but he testified on exactly what Your Honor mentioned, which is he testified. Yeah, and that I would have let stay in. The inadmissible part is when you tried to get him to go further and actually answer the ultimate question. That's the inadmissible part, and that's just a little too far. It's like a little bit of hubris. You know, you had the judge agreeing with you, so you were going to take it as far as you could possibly take it. Actually, Your Honor. To your detriment. Actually, Your Honor, I did not write, and I questioned him on the stand. I didn't use it. I know. I got it right here. I didn't use the term doctrine of equivalence. He used it first in an answer under doctrine of equivalence, and I don't remember what page it's on, but I can give that to the court. But he used it. I asked him a question. I said, so what are your conclusions here? Let me read it to you because you're wrong. No, I'm sorry. I'm talking about just in general the doctrine of equivalence. This is you speaking. It's on page 2809. So be really careful with me. No, I'm sorry. I'm talking just in general about the doctrine of equivalence. Is it your understanding the doctrine of equivalence involves a comparison of the ways and the function and the result and the intuminescent coding set forth in the patent versus SBI X41? Answer. I've only met this equivalence, and I can't say in the last two days, so I'm not too clear about it. You did use the words. You did ask the question. Your Honor, if I could ask your indulgence to turn back a prior page to appendix 2808. He's the one that used equivalence first. If you'll look at line 15, the answer, I asked him what conclusions did you draw here, and he said, well, since my conclusion is that the SBX41 coding does not swell, that that means that TYTAX has not infringed the patents either in the literary criteria, which, again, he meant literal infringement, or in the equivalence criteria. So my point was not that I didn't ask the question on equivalence. My point was that he brought it up, so I had to ask him what equivalence was. Well, you also knew that you were going to ask him what equivalence was, but they made a motion in Lemonade not to let you do it, and you defended your right to do it. So there's no question where you were going. It's not like it came up inadvertently unbeknownst to you. There was a motion excluded. That's right, Your Honor, and the way I had planned on questioning him was to get in the information about substantially same way and that the two types of chemistry, flame-retardant chemistry, which is what the SBX41 coding uses, is exactly what Martin Wildman and Mr. Holland, the company that developed the coding, said. Flame-retardant chemistry operates to extinguish and snuff out a flame. That's unlike thermal barrier chemistry, intermesent barrier chemistry, which swells and chars to create a thermal barrier. And Dr. Horrocks, in both his report and at his deposition, in fact, in response to a question from PFG's attorney at the deposition, talked about the thermally protective barrier that is created by an intermesent coding. Yeah, but it has to be in his report. It doesn't matter if they question him about it in the deposition. It has to be in his report. I saw in his report at least enough that he could have talked about function. I don't know that I would have agreed to more than that, but you could have certainly taken that and run with it. But he shouldn't have been talking about DOE. But anyway, we've been through it. We've covered it. Okay. Thank you, Your Honor. Well, I see that I'm almost out of time, so I would be remiss if I didn't mention one last thing, and that is that PFG's wrong about TYTEX's alternative ground for affirmance here. They say that it was not supported by evidence at trial. Our claim construction was that the intermesent definition required something called a carbonific. Well, there was evidence at trial that there was no carbonific. Mr. Holland twice said that the SVX-41 coding does not contain a carbonific. That's at appendix page 2702. And then PFG asked Dr. Horrocks when he was on the stand. I didn't ask him this. They asked him whether or not the TYTEX coding had a carbonific. He testified that it did not, and that's at appendix page 2836. Thank you, Your Honor. Thank you, counsel. Ms. Borchardt has a little more than two minutes rebuttal. Thank you. First, there is no waiver of the O2 micro issue in this case. PFG raised the issue of pretrial in a motion in limine, and then continued to raise it throughout trial. And this case is like GP&E in that respect, not in Verizon, where in GP&E the court said that there was no waiver where a party had raised its objections to the claim scope dispute before the case went to the jury. And that's the case here. The fact that we continued to try to object, but maybe didn't object to each and every instance in a long trial where we did end up in sidebars for a fifth of our trial time, doesn't mean we waived anything. The O2 micro issue was preserved, and we didn't waive it. This case is not like Verizon, where in the Verizon case, Verizon, the court found that Verizon never identified a claim scope dispute prior to or during the trial. That was not the case here. The opposing counsel indicated that lack of swelling testimony by Dr. Horvitz is not challenged here today. We have challenged that testimony because we said that his testimony was offered, his opinions were under the wrong meaning of the word swells. And so we very much challenge that testimony. And our brief at pages 19 through 29 lists an extensive number of examples where Dr. Horvitz redefined the meaning of the word swells to add further limitations to it. And then with respect to the issue of doctrinal equivalence, and I apologize, we don't have our briefing here in the courtroom on our underlying motion to the district court for JML for a new trial. We do have our briefs here to this court, and the judges order on our underlying motions. And as far as the briefing to this court, we did conclude our brief by asking for a saying judgment should be entered for PFG or in the alternative a new trial should be ordered with respect to all of these issues. I think your question was about the underlying motion though, and unfortunately I don't have that portion of the record with me. Thank you counsel. Thank you. Case is admitted.